UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.: |
| | : | 3:02CR00062(AWT) |
| vs. | : | |
| | : | |
| SERGIO TORRES | : | NOVEMBER 21, 2007 |

**DEFENDANT SERGIO TORRES'S**
**MEMORANDUM IN SUPPORT OF RESENTENCING**

## I.     INTRODUCTION

On November 7, 2006, this matter was remanded to this Court pursuant to United States v. Booker, 543 U.S. 220 (2005) and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005).  The defendant, Sergio Torres, respectfully submits that, had the Court known the Sentencing Guidelines were advisory, it would have imposed a different sentence.  As a result, Torres requests that the Court resentence him to a term of less than the 235 month term previously imposed.

In particular, Torres's sentence is unreasonable because he did not freely admit to the conduct that resulted in his being classified as a "leader", or the quantity of cocaine attributed to him for sentencing purposes.  Rather, after Torres' prior counsel apparently failed to appreciate the consequence of these issues, Torres' was compelled to agree.  Because Torres' sentence is based upon facts that were not proven to a jury, and that he did not freely admit, his sentence is unreasonable.

In addition, based upon the manner in which a leadership role was attributed to Torres, his role can more accurately be considered that of a manager rather than a leader. Considering the manner in which Torres was completely blindsided by his prior counsel's apparent failure to appreciate the consequence of alleged relevant conduct, including Torres' role and the quantities at issue, Torres sentence should be reduced in accordance with the factors set forth in 18 U.S.C. § 3553(a). Torres's sentence of 235 months is overly harsh considering his history and characteristics, the nature of the offense and the need for a sentence that is "sufficient, but not greater than necessary."

As set forth by Crosby, Torres's resentencing should be considered in light of the circumstances as they existed at the time of his sentencing. See Crosby, 397 F.3d at 120. Consequently, the Court should consider only the evidence and arguments presented at the time the original sentence was imposed. Torres specifically does not request an evidentiary hearing. Instead, his resentencing should be based upon the record.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Torres's Plea Agreement

On February 18, 2003, the Government and Torres entered into a plea agreement which provided that Torres would plead guilty to Count One of his indictment.  Specifically, the agreement stated that Torres would plead guilty to a charge that between July 2001 and December 2001, Torres conspired with five others to distribute and possess with intent to distribute cocaine in an amount of five kilograms or more, in violation of 21 U.S.C. § 841(a)(1).  Plea Agreement, p. 1.

The plea agreement contained no factual or Sentencing Guidelines stipulations.  The plea agreement included a provision that the Government agreed to recommend that the Court reduce Torres's offense level by three levels for acceptance of responsibility.  There was no stipulation as to the quantity of cocaine involved, or Torres's role in the offense.

### B.    Change of Plea Hearing

During the change of plea hearing, the Court advised Torres that the Sentencing Guidelines limited it discretion in sentencing.  Change of Plea Hearing, 2/18/2003 ("Plea Hearing"), p. 28.  The Court also explained that the charge to which Torres was pleading guilty carried a mandatory minimum sentence, below which the Court may not be able to depart.  Id.

During the change of plea hearing, Torres admitted that he entered into a conspiracy with the individuals listed in the indictment, and that the conspiracy occurred during the approximate time period of July 2001 through December 2001. Id., pp. 34-35. Torres did not disagree with the Government's summary of evidence, summarized by the Government as follows:

Between July 2001 and December 2001, the New Haven Drug Task Force was engaged in an investigation of cocaine distribution by a New York organization headed by a man known as Jose Cosme. Id., p. 36. The Task Force intercepted several phone calls between Cosme and Torres, and between Torres and others discussing drug debts. Id., p. 37. Many conversations included a discussion of transport and sale of quantities of cocaine. Id.

Additionally, the Task Force observed Torres's associates conduct a transaction where they provided between four and five kilograms of cocaine. Id., pp. 37-38. On the same day, a telephone conversation was intercepted in which an associate of Torres's arranged to pick up a quantity of cocaine. Id., p. 38. The next day the associate traveled to a residence and loaded the cocaine into a van, and then traveled to Torres's residence. Id. These associates were stopped after leaving Torres's residence, and between four and five kilograms of cocaine were found in the van. Id. Thereafter, telephone

conversations related to narcotics continued over Torres's telephone; Torres was personally involved with some of these conversations. Id.

As the result of admitting to this conduct, the Court found that there was a factual basis for Torres's guilty plea and accepted the plea. Id., p. 42

### C. Presentence Report and Objections

In the Presentence Report ("PSR"), the federal probation officer determined that the amount of cocaine involved in the conspiracy was 50 to 100 kilograms, despite Torres admitting to being involved with the exchange of only 8-10 kilograms of cocaine at his plea hearing. Plea Hearing, pp. 37-39; PSR, p. 3. Additionally, although there was no mention of attributing a leadership role to Torres either in his plea agreement or at the change of plea hearing, the PSR recommended that Torres receive a four-level increase for his role in the offense. PSR, p. 4.

Torres's counsel made several objections to the PSR, primarily regarding Torres's criminal history, but unfortunately failed to object to the quantity and leadership role attributed to Torres. See Sentencing Hearing, 8/6/2003 ("First Sentencing Hearing"), p. 20.

### D. The Sentencing Hearing

During the Sentencing Hearing, Torres's counsel indicated that the PSR had been summarized for Torres, and his objections

had been noted for the record.  First Sentencing Hearing, p. 6.
The Court adopted the factual statements in the PSR as its
findings of fact in the case.  Based upon the fact of the PSR,
the Court found that Torres's Total Offense Level was 37 and
that he was in Criminal History Category II.  The Court
determined that Torres's guidelines range was 235 to 293 months.
Id., p. 9.

However, Torres's counsel apparently failed to notice the
four-level increase resulting from attributing a leadership role
to Torres, as he later argued that Torres should not be
penalized for a leadership role.  Id., p. 20.  When the Court
pointed out the adjustment for the leadership role, Torres's
counsel verbally objected to the four-level increase.  Id.
After discussion, however, Torres's counsel informed the Court
that Torres wished to withdraw his objection to his
classification as a leader in the PSR.  Id., p. 23.  The Court,
observing Torres's demeanor, asked Torres if he needed more time
to consider his position.  Id., pp. 26-27.  The Sentencing
Hearing was continued in order to give Torres the opportunity to
consult with his attorney.

**E.**    **The Continued Sentencing Hearing**

During the continued sentencing hearing, Torres, through
counsel, reiterated his objection to the attribution of the
leadership role, and also made an objection as to the amount of

cocaine involved in the conspiracy.  Continued Sentencing Hearing, 9/3/2003 ("Continued Sentencing Hearing"), pp. 5-6. After a discussion of the consequences of proceeding with an evidentiary hearing, Torres's counsel indicated at a sidebar that Torres had decided to be sentenced based upon the findings of the PSR.  Continued Sentencing Hearing, p. 14.  The Court then asked the Government to proffer what it would show regarding the amount of cocaine involved in the conspiracy and Torres's role in the conspiracy.

With respect to the amount of cocaine involved with the conspiracy, after the Government set forth what it would show regarding the amount, Torres admitted to the conduct described by the Government.  Id., pp. 29-30.  Torres also agreed that 50 to 150 kilograms of cocaine was the correct range.  Id.  This admission gave him a base offense level of 36.  U.S.S.G. § 2D1.1.

The Government then proffered the following with respect to Torres's role in the offense:

In 2000, the New Haven Drug Task Force was investigating the distribution of cocaine and crack cocaine in the New Haven Area.  Continued Sentencing Hearing, pp. 16-17.  During the course of this investigation, the Task Force learned of an individual in New York, Jose Cosme, who had ties to a man named Jose Ramos, who was located in the New Haven area.  Id., p. 17-

19.  Two individuals located in Waterbury were identified as a source organization for Cosme.  Id., p. 19.  During the course of investigating this Waterbury source organization, the Task Force learned of another of Cosme's sources, the defendant Torres.  Id.

The Task Force then turned its attention to Torres, and began an investigation into his activities by intercepting his telephone conversations.  Id., p. 20.  The Task Force intercepted conversations between Cosme and Torres where Cosme allegedly informed Torres that a certain quantity of cocaine provided by Torres had been stolen from him.  Id., p. 21-22. Cosme and Torres further discussed an alleged debt and who was responsible for the debt.  Id., p. 22.

According to the Government, Torres used Luis Arteaga, Oscar Arteaga, Martin Arteaga, Alberto Torres, Ramon Morrobel, Juan Arteaga, and Julio Arteaga to facilitate the transport of cocaine to Cosme.  Id., pp. 26, 30, 31.  Additionally, Jose Santos allegedly allowed Torres to use his residence as a stash house, and Ramon Cervantes and Sergio Segura looked for a location to keep a motor home sent by a principal in California which apparently contained cocaine.  Id., pp. 27, 31.  Mario Fermin, a named co-conspirator, worked for Cosme, not for Torres, and allegedly often arranged for transportation of cocaine with Torres.  Id., p. 33.

In approximately June or July of 2001, Cosme developed a scheme to steal 20 kilograms of cocaine which he expected to receive from Torres.  Id., p. 32.  Cosme allegedly received the 20 kilograms, and then reported to Torres that it had been stolen in transit.  Id.  Torres allegedly informed Bogan of the theft, because it was Bogan's cocaine which Torres had been transporting to Cosme.  Id.

During the second sentencing hearing, Torres did not describe his own conduct in his own words, nor did he specifically admit to each and every claim made against him during the Government's proffer.  Rather, the following exchange took place:

> MR. SACHS:       Your Honor, with regard to role in the offense, Mr. Torres accepts responsibility as set forth in the Presentence Report.
>
> THE COURT:       Is that correct, Mr. Torres?
>
> THE DEFENDANT: Yes.

Continued Sentencing Hearing, p. 33.

Following this colloquy, Torres specifically protested that "I don't want to be accused of 150" and said "I don't believe I had more than 50," meaning kilos of cocaine.  Id., p. 35.  After the Court indicated that "he must tell me that he is responsible for at least 50," Torres finally agreed to the Government's proffer.  Id., pp. 35-38.  Moving the quantities at issue from 5

to 15 kilos (as Torres contemplated) to 50 to 150 kilos increased Torres' Guidelines to level 36.  Id., p. 34. Attributing a leadership role to Torres increased his offense level by four levels.  U.S.S.G. § 3B1.1(a).

## III.    LAW AND ARGUMENT

### A.    <u>Standard</u>

Remands made pursuant to <u>United States v. Booker</u>, 543 U.S. 220 (2005) are for the limited purpose of determining whether to resentence a defendant.  <u>United States v. Crosby</u>, 397 F.3d 103, 117 (2d Cir. 2005).  On a <u>Crosby</u> remand, the district court first must make a "threshold determination of whether, based on the circumstances at the time of the original sentence, it would have imposed a different sentence had it known the Guidelines were advisory."  <u>United States v. Ferrell</u>, 485 F.3d 687, 688 (2d Cir. 2007), citing <u>Crosby</u>, 397 F.3d at 120 (internal quotations omitted).  Only if the Court answers the threshold question in the affirmative does a resentencing occur.

Under the new sentencing scheme, the District Court first calculates the applicable Guidelines sentence, including any departures warranted by the Guidelines.  Next, the District Court decides, based upon the factors in 18 U.S.C. § 3553(a), whether to sentence within Guidelines range, or impose a non-Guidelines sentence.  <u>United States v. Ganim</u>, 1006 WL 1210984, *2 (D. Conn. 2006).

Pursuant to Crosby, the determination whether to resentence a defendant should be made in light of the circumstances as they existed at the time of the original sentence. Crosby, 397 F.3d at 120; see United States v. Ferrell, 845 F.3d 687, 688 (2d Cir. 2007); United States v. Lenoci, 2006 WL 12110078, *3 (D. Conn. 2006) (Slip Op.). Accordingly, Torres does not seek an evidentiary hearing as to the conduct attributed to him by the Government, but rather seeks a resentencing determination based upon the record as it currently exists.

Torres's sentence, if not constrained by the Guidelines, could have been considerably lower. His current sentence, in light of the circumstances surrounding his change of plea and sentencing hearings and the § 3553(a) factors, is unreasonable.

**B.**    **The Court Improperly Attributed A Leadership Role To Torres**

Although Torres ultimately did agree to be sentenced based upon the role proffered by the Government, his reluctance to accept this classification was apparent. Regardless, based upon the conduct actually admitted by Torres, his classification as a leader was in error. His role would more accurately be considered that of a manager rather than a leader. See U.S.S.G. § 3B1.1(b).

Determining whether a defendant was an organizer or leader takes into consideration "the degree of discretion exercised by him, the nature and degree of his participation in planning or

organizing the offense, and the degree of control and authority over the other members of the conspiracy." United States v. Si Lu Tian, 339 F.3d 143, 157 (2d Cir. 2003) (internal quotations omitted). For example, a defendant who ran a drug import organization, and directed others on delivery of the imported drugs to various customers can properly be considered a leader. See United States v. Cuevas, 496 F.3d 256, 267 (2d Cir. 2007).

In contrast, a defendant may properly be considered a manager or supervisor if he "exercised some degree of control over others involved in the commission of the offense or played a significant role in the decision to recruit or to supervise lower-lever participants." United States v. Burgos, 324 F.3d 88, 92 (2d Cir. 2003). Torres was simply a small player in a larger overall scheme. He worked with several other individuals who would transport drugs, but he was fundamentally just a conduit through which contraband flowed. The evidence proffered by the Government reveals that Torres was involved with transporting cocaine only to Cosme, and appeared to receive the cocaine from only one west coast organization. Torres, therefore, was not an independent trafficker, receiving cocaine from various suppliers, and the distributing it to various individuals.

This is not to say that Torres did not have connections with several associates, who were involved with transporting the

cocaine.  However, in the overall trafficking organization, Torres was certainly not a high-level participant.  His involvement with associates carrying out the actual transport is most accurately characterized, as most, as supervising lower-level participants.  Torres has not admitted to any conduct which would indicate that he played an organizational role in the overall trafficking scheme.  See, e.g., United States v. Blount, 291 F.3d 201, 217 (2d Cir. 2002) (defendant responsible for distributing bundles of cocaine to street dealers and collecting proceeds properly characterized as a manager); United States v. Feliz-Ramirez, 223 Fed. Appx. 33, 36 (2d Cir. 2007) (defendant who organized drug deliveries, arranged for collection of proceeds, and supervised cocaine deliveries, but who did not own the cocaine, and took direction from higher-ups in the organization was properly considered a manager); United States v. Gallashaw, 2007 WL 28328, *3 (11th Cir. 2007) (defendant who was second in command of conspiracy hierarchy, paid other members of the conspiracy, stored cocaine at his home, and recruited members was properly considered a manager).

Based upon the conduct attributable to Torres, his role in the overall offense is more accurately considered to be a managerial role.  If the Court were to sentence Torres based upon having a managerial role, his total offense level would be 210-262 months.  Attributing a managerial role rather than a

leadership role to Torres has the potential to lower his sentence by over two years, which is certainly not a nontrivial amount.

Nevertheless, the Guidelines calculation is but one fact to be used by the Court in determining Torres sentence. Even if the Court were to determine that the original Guidelines calculation was correct, Torres sentence should still be reduced based upon the factors in 18 U.S.C. § 3553(a).

### C.    Section 3553(a) Factors

With the above background in mind, the Court must impose a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Title 18, United States Code § 3553(a) provides a litany of factors for the Court to consider in making its determination of a reasonable sentence.

> (1)   the nature and circumstances of the offenses and the history and characteristics of the defendant;
>
> (2)   the need for the sentence imposed –
>
>> A.   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> B.   to afford adequate deterrence to criminal conduct;
>>
>> C.   to protect the public from further crimes of the defendant; and
>>
>> D.   to provide the defendant with needed education or vocation training, medical

– 14 –

                          care, or other correctional treatment
                          in the most effective manner;

        (3)   the kinds of sentence available;

        (4)   the kinds of sentence and sentencing range
              established for –

              A.    the applicable category of offense
                    committed by the applicable category of
                    defendants as set forth in the
                    Guidelines.

              B.    . . . . . .

        (5)   any pertinent policy statement –

              A.    issued by Sentencing Commission...

        (6)   the need to avoid unwarranted sentence
              disparities among defendants with similar
              records who have been found guilty of
              similar conduct; and

        (7)   the need to provide restitution to any
              victims of the offense.

18 U.S.C. § 3553(a).

        Sentencing is no longer a largely forgone conclusion.

"District courts...must consider all of the applicable factors,

listen carefully to defense and government counsel, and sentence

the person before them as an individual." United States v.

Ranum, 353 F.Supp.2d 984, 987 (E.D. Wis. 2005).  To fall back on

the Guidelines as having a presumptive correctiveness or worth

of weighted consideration would effectively reinstate the

formerly mandatory nature of the Guidelines, which Booker

belies.  See United States v. West, 383 F.Supp.2d 517, 519–20 (S.D.N.Y. 2005).

There is no requirement that the court "justify a sentence outside [the Guidelines] by citing factors that take the case outside the 'heartland.'  Rather, courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as the ultimate sentence is reasonable and carefully supported by the reasons tied to the § 3553(a) factors."  Ranum, 353  F.Supp.2d at 987; see also United States v. Emmenegger, 329 F.Supp. 2d 416, 428 (S.D.N.Y. 2004) (considering defendant's age and explaining that Guidelines "err in giving virtually no weight to the 'history and characteristics of the defendant" in spite of statutory equality enjoyed by Guidelines and "nature and circumstances of the offense").

Torres's sentence of 235 months ––  nearly 20 years –– is greater than necessary, considering his personal history and the severity of his crime.  Should the Court find that its original Guidelines calculation was accurate, Torres respectfully requests that the Court resentence him below the applicable Guidelines range in order to impose a sentence that is sufficient, but not greater than necessary.

1.      **The History and Characteristics of the Defendant**

Torres is a 42 year old man, who was born in Mexico.  PSR, p.6.  Torres's father moved to California when Torres was only two years old, and sent money back to Mexico to support his family.  Id.  In 1982, when he was 17 years old, Torres crossed the border into the United States, and traveled from Los Angeles to New Haven, where he lived until his arrest.  Id.  Torres became a permanent resident alien of the United States on December 1, 1990.  Id.

Torres married his wife Wanda in 1986, and they have four daughters, ranging in age from 6 to 20 years old.  Id., p.7.  Torres's wife and daughters have now lived for five years without their father.  Torres worked at various jobs throughout his life, including repairing and selling used cars, and as a welder.  Id., p. 8.  At the time of his arrest, he owned and operated a restaurant in New Haven.  Id.

Torres became involved with drugs around 1999, when he used cocaine for approximately one year.  Id., p. 7.  Torres is not a lifelong criminal, and became involved with drug activities a relatively short time before his arrest.  As Torres is not a lifelong criminal, the purposes of justice and rehabilitation will be served through a sentence of substantially less than 235 months.  See 18 U.S.C. § 3553(a)(2)(A).  Additionally, the short length of Torres's criminal career indicates that his likelihood

of recidivism is not particularly high, meaning that his
sentence is not needed to protect the public from further
crimes.  18 U.S.C. § 3553(a)(2)(C); see United States v. Gayle,
389 F.3d 406, 410-411 (2d Cir. 2004).

Section 3553(a)(1) of Title 18 requires the Court to
consider the personal characteristics of a defendant before
sentencing.  Torres's personal history and characteristics weigh
in favor of a sentence below 235 months.

### 2.    The Nature of the Offense

As detailed above, Torres's role in the overall scheme as
set forth by the Government should be considered by the court.
Although Torres was associated with several of the co-
defendants, he was only a small part of an apparently extensive
scheme.  The Government has set forth no evidence that Torres
had any organizational role in this larger scheme.  In fact, the
Government's proffered evidence shows Torres only as a
facilitator for transport of cocaine.

In light of the circumstances surrounding Torres's plea and
sentence, the Court should take into account Torres's actual
role in the offense with respect to the overall organization.
Whether he is considered to be a leader or manager under the
Guidelines, in reality, he was but a small player.

### 3.    Torres's Sentence Is Greater Than Necessary

Torres is not a life-long criminal, and before this specific period in his life, had no criminal history whatsoever. Torres, based upon the advice of his counsel, believed that he was pleading guilty to an offense involving 5-15 kilograms of cocaine, and not involving a leadership role. The plea agreement into which Torres entered did not make a factual or Guidelines stipulation, and Torres therefore relied upon the assurances of his attorney.

At the Sentencing Hearing, Torres learned for the first time that his sentence would not be at the 29-32 base offense level, or near the mandatory minimum of 10 years. When Torres entered into the plea agreement, he agreed to plead guilty to conspiracy to distribute and possess with intent to distribute 5 or more kilograms of cocaine, not anticipating that 50 to 150 kilograms of cocaine ultimately would be attributed to him, resulting in a sentence of 20 years or more. While the plain language of the plea agreement places no upper limit on the quantity of cocaine, in actuality, considering that Torres admitted to a quantity of only 8-10 kilograms during his Change of Plea Hearing, the plea agreement did not accurately reflect the fact that a quantity 50 to 150 kilograms of cocaine would be basis of his sentence. The lack of clarity of the offense and the ambiguity as to the precise offense to which Torres was

pleading weighs in favor of resentencing.  See In re Altro, 180
F.3d 372, 375 (2d Cir. 1999) (plea agreements are interpreted by
looking to the reasonable understanding of the parties and by
resolving any ambiguities against the Government); see also
United States v. Palladino, 347 F.3d 29, 33 (2d Cir. 2003)
("because the government ordinarily has certain awesome
advantages in bargaining power, any ambiguities in the agreement
must be resolved in favor of the defendant").

Further, Torres's counsel failed to object to the quantity
or the leadership role attribution in the PSR.  After verbally
objecting during the first Sentencing Hearing, he reiterated
that Torres objected to being classified as a leader in the
conspiracy at the Continued Sentencing Hearing.  Continued
Sentencing Hearing, p. 5.  However, after a recess, Torres's
counsel indicated that Torres wished to be sentenced at the
level set forth in the PSR.  Id., p. 14.

The record is clear that Torres seemed blindsided by the
doubling of his anticipated sentence.  Torres's shock was
evident to the Court, which noted that "I can't held but observe
that I've looked at Mr. Torres' body language and he seems to be
concerned at this point."  First Sentencing Hearing, p. 26.

Torres will be approximately fifty-six years when he is
released from prison under his current sentence.  At that time,
his youngest daughter will be twenty-two, and he will have been

absent for a significant part of his daughters' lives. Considering Torres's personal history, the nature of his offense, and the circumstances surrounding his guilty plea and sentencing hearings, a sentence of 235 months is longer than necessary to achieve the goals of sentencing.  Rehabilitation is a goal of punishment, and that goal cannot be served if a defendant "can look forward to nothing beyond imprisonment." United States v. Carvajal, 2005 WL 476125, *6 (S.D.N.Y. 2005). The totality of the circumstances in this case warrants resentencing.

## IV.    CONCLUSION

For the foregoing reasons, defendant Sergio Torres respectfully requests that the Court find that resentencing is warranted, and sentence him to less that 235 months.

```
                              THE DEFENDANT,
                              SERGIO TORRES

                       BY      /S/
                              JAMES N. TALLBERG
                              Federal Bar No.: ct17849
                              Karsten, Dorman
                               & Tallberg, LLC
                              8 Lowell Road
                              West Hartford, CT 06119
                              Tel. 860-233-5600
                              Fax 860-233-5800
                              jtallberg@kdtlaw.com
```

## <u>CERTIFICATION</u>

I hereby certify that on November 21, 2007, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

___/S/_____
James N. Tallberg